# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHILLIP A. THOMPSON, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 19-CV-3455 |
| | : | |
| TAMMY FERGUSON, *et al.*, | : | |
|     Defendants. | : | |

## MEMORANDUM

**SCHILLER, J.**                                                                                                                   August 5, 2019

      Plaintiff Phillip A. Thompson, a prisoner currently incarcerated at SCI Phoenix, filed this civil action pursuant to 42 U.S.C. § 1983 based on allegations related to the destruction of inmate property during the transfer of prisoners from SCI Graterford to SCI Phoenix. He names as Defendants: (1) Tammy Ferguson, Superintendent of SCI Graterford and SCI Phoenix; (2) Mandy Sipple, Deputy Superintendent of SCI Graterford and SCI Phoenix; (3) "C.E.R.T. John Does," the employees responsible for the move; and (4) Secretary of Correction John Wetzel. Thompson seeks to proceed *in forma pauperis*. For the following reasons, the Court will grant Thompson leave to proceed *in forma pauperis* and dismiss his Complaint without prejudice for failure to state a claim.

## I.    FACTS[1]

      Thompson was previously incarcerated at SCI Graterford. As that prison was closing, inmates and their property were relocated to SCI Phoenix. Thompson alleges members of a Corrections Emergency Response Team ("CERT") took custody of prisoners' property in connection with the move. Thompson alleges generally that prisoners' property was destroyed,

---

[1] The allegations are taken from Thompson's Complaint. (*See* ECF No. 1.)

1

lost, or left in disarray. He also makes allegations that there were personal disputes among permanent staff at SCI Graterford/Phoenix and members of CERT. He claims that certain CERT members engaged in a systematic conspiracy designed to harm and frustrate the prisoners by damaging and destroying their personal property during the move to SCI Phoenix. This included religious items, legal material, family photos, and other items. Thompson claims that the "root cause of these actions [was] inherently racism, and religious discrimination" motivated by "hatred" because the John Does are "white males, ex or retired military personnel, and live in the middle and western districts." (Compl. at 23.)[2]

Thompson's allegations are at times stated generally, discussing the experiences of "prisoners" in conclusory and collective terms, rather than alleging how he himself was injured by the actions he describes. He also describes the actions of the named supervisory Defendants in general terms. For example, he asserts that Defendants Wetzel, Ferguson and Sipple, each of whom are supervisory officials at SCI Graterford/Phoenix, "are indirectly responsible [for the actions of the John Doe CERT Defendants] as they hired and supervised these defendants, and thus, they knew and/or should have known about the crimes this group of officers were committing since hundreds of prisoners were complaining and hundreds of staff members witnessed and had to address this matter to these defendants." (*Id.* at 20-21.)

On an individual level, Thompson alleges that he lost photographs "of his step-father and himself with kufees, beards, prayer rugs over their shoulders, of [his] Muslim nieces and nephews and their children wearing Islamic clothing." (*Id.* at 21.) He also indicates that his "legal materials" were taken, depriving him of "a fair and meaningful appeal in the Court of Common Pleas, and

---

[2] The Court adopts the pagination assigned to the Complaint by the CM-ECF docketing system.

the Pa. Superior Court." (*Id.*) Thompson also alleges that he had previously been housed at other prisons within the Pennsylvania Department of Correction and was "disliked for his standings against the administration for violating his First Amendment rights, such as his religious beliefs, ethnic background, access to the courts, and also the use of the grievance filing system over the years" to file grievances, some of which were against CERT members. (*Id.* at 22.)

Thompson asserts claims under the First, Fifth, Sixth, Eighth, and Fourteenth Amendments. (*Id.* at 5.) At times he appears to be seeking relief on behalf of prisoners other than himself who also lost property in connection with the transfer. Thompson attached to his Complaint an affidavit he signed, as well as identical affidavits from several prisoners who are not parties to this case, explaining that he filed grievances to remedy the loss of property but that the grievance process at SCI Phoenix was suspended and frustrated. (*Id.* at 33-46.) Thompson also attached copies of grievances and institutional responses as exhibits to his Complaint. It appears he sought reimbursement for the following items: (1) envelopes; (2) over nineteen years of unspecified legal work; (3) 300 photographs of deceased family; (4) a towel; and (5) a watch. (*Id.* at 48, 53, 59 & 68.)

A search of public dockets reflects that Thompson was convicted of murder and related offenses in 2001. *See Commonwealth v. Thompson*, Docket No. CP-23-CR-0003788-2000 (Ct. of Common Pleas of Delaware Cty). Relevant here, in 2018, he appealed the dismissal of his third post-conviction petition as untimely and filed a concise statement of matters complained of on appeal prior to the transfer of prisoners to SCI Phoenix. *Id.* The transfer occurred while Thompson's appeal was pending. Thompson was given two extensions of time to file an appellate brief and timely filed his brief in January of 2019. *Commonwealth v. Thompson*, 1937 EDA 2018 (Pa. Super. Ct). The Pennsylvania Superior Court affirmed the dismissal of Thompson's post-

conviction petition "because [the] petition [was] untimely and [Thompson] ha[d] not pled an exception to the time bar." *Commonwealth v. Thompson*, No. 1937 EDA 2018, 2019 WL 1596195, at *3 (Pa. Super. Ct. Apr. 15, 2019).

## II. STANDARD OF REVIEW

The Court grants Thompson leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[3] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory allegations do not suffice. *Id.* As Thompson is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). For the following reasons, Thompson has failed to state a claim.

---

[3] However, as Thompson is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

4

### A. Lack of Standing

Many of Thompson's allegations pertain to general conduct that occurred during the transition that generally affected other prisoners or that did not clearly affect him. "[A] plaintiff must assert his or her own legal interests rather than those of a third party" to have standing to bring a claim. *See Twp. of Lyndhurst, N.J. v. Priceline.com, Inc.*, 657 F.3d 148, 154 (3d Cir. 2011). Specifically, "[t]o have standing to bring a claim in federal court, a plaintiff must show, inter alia, that he has 'suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical.'" *Marin v. Leslie*, 337 F. App'x 217, 219 (3d Cir. 2009) (per curiam) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "'For an injury to be "particularized," it 'must affect the plaintiff in a personal and individual way.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan*, 504 U.S. at 560 n.1.). To the extent Thompson is raising claims based on conduct that did not directly affect his property or cause him harm, and to the extent Thompson is raising claims on behalf of other inmates, he lacks standing to pursue those claims.

### B. Shutting Down the Grievance System

Thompson's allegations about the shutting down of the grievance system also do not state a claim. "Prison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (per curiam); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (per curiam). Although shutting down the grievance system could affect the analysis regarding whether Thompson properly exhausted his claims as required by the Prison Litigation Reform Act, it does not provide an independent basis for a constitutional claim. The Court will therefore dismiss any claims based on allegations related to the grievance system.

### C. First Amendment Claims

Thompson appears to be pursuing a claim under the First Amendment that he was denied access to the courts. "Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). "Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury'—that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." *Id.* (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)). "[T]he underlying cause of action, . . . is an element that must be described in the complaint." *Christopher*, 536 U.S. at 415.

Thompson has not stated a plausible claim for denial of access to the courts. Thompson's Complaint and exhibits allege that he has been prevented from challenging his conviction, presumably as related to his appeal of the denial of his third post-conviction petition, which was pending at the time of the transfer of prisoners to SCI Phoenix. However, Thompson has not alleged a basis for a non-frivolous challenge to his conviction that he was prevented from pursuing, especially in light of the state courts' conclusions that his third post-conviction petition was untimely. Furthermore, Thompson was given two extensions of time to file his appellate brief and was able to file his appellate brief on a timely basis, which the Superior Court considered. *See Thompson*, 2019 WL 1596195, at *2 ("On appeal, Appellant raises a single issue for our review." (citing Appellant's Brief)). As Thompson has not alleged a basis for a legitimate challenge to his conviction or explained how he was prevented from pursuing his claims as a result of the Defendants' conduct, he has not plausibly alleged that he was denied access to the courts. *See Bowens v. Matthews*, No. 18-3032, 2019 WL 1461537, at *2 (3d Cir. Apr. 2, 2019) ("To the extent

6

that Bowens described his PCRA claim at all, he did not describe it well enough to show that it is 'nonfrivolous' or 'arguable.'"); *Monroe*, 536 F.3d at 206 (plaintiffs' allegations that "defendants confiscated their legal materials" and that "they lost the opportunity to pursue attacks of their convictions and civil rights claims" without "specify[ing] facts demonstrating that the claims were nonfrivolous" did not state a claim).

Thompson also alludes to religion in his Complaint, but he does not allege a basis for a claim that he was prevented from exercising his religion in violation of the First Amendment. Although some of the photographs lost or destroyed in the transfer depicted religious items or religious individuals, the fact that the subject of some of Thompson's photographs were religious in nature does not support a First Amendment claim. *See Robinson v. Superintendent Houtzdale SCI*, 693 F. App'x 111, 115 (3d Cir. 2017) (per curiam) (explaining that "[t]he threshold question in any First Amendment or RLUIPA case is whether the prison's challenged policy or practice has substantially burdened the practice of the inmate-plaintiff's religion").

Thompson also appears to be asserting a retaliation claim under the First Amendment. "A prisoner alleging retaliation in violation of the First Amendment must show (1) that he engaged in constitutionally protected conduct; (2) that an adverse action was taken against him by prison officials sufficient to deter him from exercising his constitutional rights; and (3) that there is a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Humphrey v. Sec'y Pennsylvania Dep't of Corr.*, 712 F. App'x 122, 124 (3d Cir. 2017) (per curiam) (citing *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)). Thompson's retaliation claim appears to be grounded in his allegation that, when he was incarcerated in other prisons within the Pennsylvania Department of Correction, he was "disliked for his standings against the administration for violating his First Amendment rights, such as his religious beliefs, ethnic

7

background, access to the courts, and also the use of the grievance filing system over the years" to file grievances, some of which were against CERT members. (Compl. at 22.) This allegation is far too broad and generalized to state a plausible retaliation claim. Thompson does not allege sufficient facts about the behavior giving rise to the "dislike," or about the timing of his grievances relative to the move to support a plausible causal link between any constitutionally protected conduct and the events in question. Especially in the context of his other allegations, which suggest that all prisoners were treated similarly, he has not provided enough factual allegations to plausibly support a claim that he was targeted and retaliated against for filing grievances or other constitutionally protected conduct.

### D. Fifth Amendment Claims

The Court understands Thompson to be raising a claim under the Takings Clause of the Fifth Amendment. "The Takings Clause of the Fifth Amendment provides that 'private property [shall not] be taken for public use, without just compensation.'"[4] *Nat'l Amusements Inc. v. Borough of Palmyra*, 716 F.3d 57, 63 (3d Cir. 2013) (quoting U.S. Const. amend. V) (alteration in original). Nothing in the Complaint suggests that Thompson's property was taken for a public purpose. Accordingly, the Takings Clause is not implicated here. *See Roop v. Ryan*, Civ. A. No. 12-0270, 2012 WL 1068637, at *3 (D. Ariz. Mar. 29, 2012) ("A prisoner property claim only implicates the Fifth Amendment Takings Clause where the prisoner alleges that prison officials took his personal property and converted it for public use without just compensation."); *Allen v. Wood*, 970 F. Supp. 824, 831 (E.D. Wash. 1997) ("Plaintiff fails to show that property he was authorized to receive was taken for public use.").

---

[4] The Takings Clause applies to the states through the Fourteenth Amendment. *See Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001).

### E. Sixth Amendment Claims

Although unclear, it appears Thompson may also be raising claims under the Sixth Amendment. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. Those protections, which pertain to criminal trials, bear no relevance to Thompson's allegations about his property. Accordingly, the Court will dismiss any Sixth Amendment claims.

### F. Eighth Amendment Claims

The destruction of Thompson's property also does not provide a basis for a claim under the Eighth Amendment. Conditions of confinement violate the Eighth Amendment's prohibition on cruel and unusual punishment if they satisfy two criteria. First, the conditions "must be, objectively, sufficiently serious" such that a "prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Second, the official responsible for the challenged conditions must exhibit a "sufficiently culpable state of mind," which "[i]n prison-conditions cases . . . is one of deliberate indifference to inmate health or safety." *Id.* The destruction of property does not equate to a sufficiently serious deprivation that would give rise to a claim under the Eighth Amendment. *See Payne v. Duncan*, Civ. A. No. 15-1010, 2017 WL 542032, at *9 (M.D. Pa. Feb. 9, 2017) ("Plaintiff's claim for destruction of property under the Eighth Amendment does not constitute a deprivation of life's necessities."), *aff'd*, 692 F. App'x 680 (3d Cir. 2017); *Dean v. Folino*, Civ. A.

No. 11-525, 2011 WL 4527352, at *3 (W.D. Pa. Aug. 22, 2011) (allegations regarding destruction of property did not state Eighth Amendment claim), *report and recommendation adopted*, No. CIV.A. 11-525, 2011 WL 4502869 (W.D. Pa. Sept. 28, 2011). Accordingly, the Court will dismiss Thompson's Eighth Amendment claims.

### G. Fourteenth Amendment Claims

Thompson is also pursuing a due process claim under the Fourteenth Amendment based on the loss and/or destruction of his property. However, there is no basis for a due process claim because Pennsylvania law provides Thompson with an adequate state remedy. *See Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir. 2013) ("'[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.'" (quoting *Hudson v. Palmer*, 468 U.S. 517, 533 (1984))); *Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (per curiam) (explaining that the Pennsylvania Tort Claims Act provides an adequate remedy for a willful deprivation of property). Accordingly, Thompson has not stated a basis for a due process claim because state law provides him a remedy for his destroyed property. *See McNeil v. Grim*, 736 F. App'x 33, 35 (3d Cir. 2018) (per curiam) ("[E]ven if McNeil claimed that the prison grievance procedures were constitutionally inadequate, Pennsylvania's state tort law would provide an additional adequate remedy.").

Thompson also appears to be raising equal protection claims under the Fourteenth Amendment. However, prisoners do not constitute a protected class for Fourteenth Amendment purposes. *See Myrie v. Comm'r, N.J. Dep't of Corr.*, 267 F.3d 251, 263 (3d Cir. 2001). Furthermore, Thompson has not adequately alleged that he was treated differently from others who were similarly situated by virtue of his race or religion. *See Phillips v. Cty. of Allegheny*, 515 F.3d

224, 243 (3d Cir. 2008) (to state an equal protection claim on a "class of one" theory, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment"); *see also Faruq v. McCollum*, 545 F. App'x 84, 87 (3d Cir. 2013) ("To state a claim for race- or religion-based discrimination, [plaintiff] needed to show specifically that he received different treatment from that received by other similarly situated inmates." (citing *Williams v. Morton*, 343 F.3d 212, 221 (3d Cir. 2003)). To the contrary, Thompson alleges that numerous inmates were subjected to the same or similar conditions of which he complains. Although he claims that the officers who destroyed inmates' property were motivated by bias toward race and/or religion, as well as dislike of SCI Graterford staff, Thompson suggests that the officers treated all inmates' property with similar disdain regardless of race or religion. (*See, e.g.*, Compl. at 21, ¶ 31; *id.* at 23, ¶¶ 49-50.) Accordingly, Thompson has not alleged a basis for an equal protection claim.

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss Thompson's Complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). "In reaching this conclusion, [the Court] do[es] not wish to understate or minimize the loss that [Thompson] has described in his complaint; [the Court] hold[s] only that he has not stated a claim for the violation of a constitutional right." *Hernandez v. Corr. Emergency Response Team*, 771 F. App'x 143, 145 (3d Cir. 2019) (per curiam). Thompson will be permitted to file an amended complaint in the event he can cure any of the defects in his claims. An appropriate Order follows.