# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHILLIP A. THOMPSON, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 19-CV-3455 |
| | : | |
| TAMMY FERGUSON, *et al.*, | : | |
|     Defendants. | : | |

## MEMORANDUM

**SCHILLER, J.**                                                                                                   **OCTOBER 2, 2019**

      Currently before the Court is an Amended Complaint filed by Plaintiff Phillip A. Thompson, a prisoner currently incarcerated at SCI Phoenix, which raises claims pursuant to 42 U.S.C. § 1983 stemming from the destruction of inmate property during the transfer of prisoners from SCI Graterford to SCI Phoenix. Thompson also asserts claims related to his mail. For the following reasons, the Court will dismiss Thompson's claims based on the destruction of his property and sever the claims based on Thompson's mail.

## I.     FACTS AND PROCEDURAL HISTORY[1]

      Thompson's initial Complaint named as Defendants: (1) Tammy Ferguson, Superintendent of SCI Graterford and SCI Phoenix; (2) Mandy Sipple, Deputy Superintendent of SCI Graterford and SCI Phoenix; (3) "C.E.R.T. Team John Does," the employees responsible for moving the inmates and their property; and (4) Secretary of Correction John Wetzel. Thompson generally alleged that members of a Corrections Emergency Response Team ("CERT") who were responsible for transporting inmates' property from SCI Graterford to SCI Phoenix

---

[1] The allegations are taken from Thompson's pleadings. The Court adopts the pagination assigned to the Amended Complaint by the CM/ECF docketing system because Thompson's complaint is not consecutively paginated.

deliberately destroyed some of that property during the move. Thompson alleged that CERT members destroyed certain of his legal materials as well as photographs of family members in religious clothing. He also claimed that he had been housed in other facilities within the Department of Corrections and that he was generally disliked for filing grievances and standing up to the administration in matters of constitutional concern. He asserted claims under the First, Fifth, Sixth, Eighth, and Fourteenth Amendments, and appeared to seek relief based on the destruction of his own property as well as on behalf of prisoners other than himself who suffered similar property loss.

After granting Thompson leave to proceed *in forma pauperis*, the Court screened the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B). Relevant here, the Court concluded that Thompson failed to state a claim for denial of access to the courts because he failed to allege that the loss or destruction of his legal property plausibly prevented him from pursuing an appeal from the denial of his third post-conviction petition, which was pending at the time of the move. The Court also observed that Thompson had not stated a First Amendment free exercise claim because the fact that the destroyed photographs contained religious content did not prevent Thompson from practicing his religion. Thompson could not state a due process claim based on the loss and/or destruction of his property due to the availability of post-deprivation remedies, and he failed to state an equal protection claim because he did not plausibly allege that he was treated differently from others similarly situated. Thompson also failed to state a retaliation claim because his allegations were too broad and generalized. However, the Court gave Thompson leave to file an amended complaint.

Thompson filed an Amended Complaint which again names Ferguson, Sipple, Wetzel, and CERT John Does as Defendants, and adds Smart Communications as a Defendant. He

brings First, Fifth, Sixth, Eighth and Fourteenth Amendment claims predominately based on the destruction of his legal property, photographs with religious content, and other personal property in connection with the transfer of prisoners to SCI Phoenix.[2] Thompson has also added claims that concern his mail, which were not included in the initial Complaint and that do not relate to the destruction of property that occurred during the transfer. He seeks compensatory and punitive damages, and reinstatement of his appellate rights and/or *habeas*-style relief. (Am. Compl. ECF No. 7 at 20-21.)

Thompson was convicted of murder in 2001 but claims his innocence. As noted in the Court's prior Memorandum, (ECF No. 5 at 3-4), a search of public dockets reflects that Thompson was convicted of murder and related offenses in 2001.[3] *See Commonwealth v. Thompson*, CP-23-CR-0003788-2000 (Ct. of Common Pleas of Delaware Cty). Relevant here, in 2018, he appealed the dismissal of his third post-conviction petition as untimely and filed a concise statement of matters complained of on appeal prior to the transfer of prisoners to SCI Phoenix. *Id*. The transfer occurred while Thompson's appeal was pending. Thompson was

---

[2] Thompson's Fifth, Sixth, and Eighth Amendment claims based on the destruction of his property fail outright for the reasons discussed in the Court's prior Memorandum. (ECF No. 5 at 8-10). To the extent Thompson intended to bring a retaliation or discrimination claim, (*see* Am. Compl. ECF No. 7 at 4), he does not develop those claims at all and thus, they are not plausible. *See Pelzer v. Superintendent Houtzdale SCI*, 547 F. App'x 98, 99 (3d Cir. 2013) (per curiam) ("While he presents some vague and conclusory allegations that the defendants destroyed his property in retaliation for his filing unidentified prior legal actions, these allegations, standing alone, are insufficient to state a claim."); *Faruq v. McCollum*, 545 F. App'x 84, 87 (3d Cir. 2013) ("To state a claim for race- or religion-based discrimination, [plaintiff] needed to show specifically that he received different treatment from that received by other similarly situated inmates." (citing *Williams v. Morton*, 343 F.3d 212, 221 (3d Cir. 2003)). The Court will address his more developed claims arising from CERT's conduct below.

[3] The Court takes judicial notice of the dockets and prior opinions issued in Thompson's criminal case. *See Buck v. Hampton Twp.*, 452 F.3d 256, 260 (3d Cir. 2006) (holding that courts may consider matters of public record).

given two extensions of time to file an appellate brief and timely filed his brief in January of 2019. *Commonwealth v. Thompson*, 1937 EDA 2018 (Pa. Super. Ct). The Pennsylvania Superior Court affirmed the dismissal of Thompson's post-conviction petition "because [the] petition [was] untimely and [Thompson] ha[d] not pled an exception to the time bar." *Commonwealth v. Thompson*, 1937 EDA 2018, 2019 WL 1596195, at *3 (Pa. Super. Ct. Apr. 15, 2019).

In his Amended Complaint, Thompson again alleges that he was denied access to the courts because his legal materials were destroyed while the appeal of his third post-conviction petition was pending. He lost "trial transcripts, affidavits, and relevant photos which would have had key value to support [his] innocen[c]e, and further show[n] that the affidavit/criminal complaint, was invalid." (Am. Compl. ECF No. 7 at 15.) Thompson claims that the items were relevant to his appeal, and that although he received two extensions, he was "forced to file an incomplete brief" in the absence of his legal materials. (*Id.* at 17.)

Turning to Thompson's non-legal property, he alleges that he lost "personal photos of himself and currently living, and deceased family, and friends displaying Islamic appearances, prayer rugs and long beards associated with sunni muslim beliefs." (*Id.* at 15.) Thompson also lost other personal property in connection with the move including his television and radio.[4] (*Id.*)

---

[4] Thompson alleges that he became infuriated over the destruction of his property and demanded to see a superior officer. He indicates that Ferguson entered the unit at that point, directed CERT members to take Thompson away from the other inmates, and handcuff him. (Am. Compl. ECF No. 7 at 16.) Thompson alleges that he told Ferguson what happened to his property and she directed him to the grievance system. (*Id.*) It appears Thompson included these allegations to illustrate Ferguson's knowledge of the events in question, not as a separate basis for a claim.

Thompson's Amended Complaint adds claims not asserted in his original Complaint that the Court understands to relate to the Department of Corrections's recently adopted mail policy. "Pursuant to that policy, non-privileged incoming mail addressed to inmates must be sent to Smart Communications' facility in Florida where the mail is scanned, emailed to the facility where the inmate is located, printed by DOC staff, and delivered to the inmate."[5] *Robinson v. Pa. Dep't of Corr.*, Civ. A. No. 19-1689, 2019 WL 2106204, at *1 (E.D. Pa. May 13, 2019); *see also Jacobs v. Dist. Attorney's Office*, Civ. A. No. 10-2622, 2019 WL 1977921, at *3 (M.D. Pa. May 3, 2019). In contrast, "**privileged** inmate correspondence must be addressed and sent to the inmate at the address of the institution where he or she is housed." *See* https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/803%20Inmate%20Mail%20and%20Incoming%20Publications.pdf (last visited Sept. 26, 2019) (emphasis in original).

Thompson alleges that Wetzel, Ferguson and Sipple have contracted with Smart Communications to violate his right to communication "without intrusion of privacy." (Am. Compl. ECF No. 7 at 18.) He alleges that "protected letters" from the courts and the district attorney's office were sent to Smart Communications, that he did not receive the original mail, and that the mail was not opened in his presence. (*Id.*) He also claims that privileged communications from attorneys are being opened, photocopied and placed in a database for seven years. (*Id.*)

## II. STANDARD OF REVIEW

As Thompson is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) applies,

---

[5] The relevant policy, DC-ADM 803 is available at https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/803%20Inmate%20Mail%20and%20Incoming%20Publications.pdf (last visited Sept. 26, 2019).

5

which requires the Court to dismiss the Amended Complaint if it fails to state a claim. Whether the Amended Complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* As Thompson is proceeding *pro se*, the Court construes his allegations liberally. *See Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). For the following reasons, Thompson has failed to state a claim.

### A. Claims Based on the Destruction of Photographs and Personal Property

Thompson's claims related to the destruction of his property, including family photographs, are best construed as due process claims under the Fourteenth Amendment. However, as explained in the Court's earlier Memorandum (ECF No. 5 at 10), there is no basis for a due process claim because Pennsylvania law provides Thompson with an adequate state remedy for his loss. *See Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir. 2013) ("'[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.'" (quoting *Hudson*

*v. Palmer*, 468 U.S. 517, 533 (1984))); *Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (per curiam) (explaining that the Pennsylvania Tort Claims Act provides an adequate remedy for a willful deprivation of property). Accordingly, Thompson has not stated a basis for a due process claim. *See McNeil v. Grim*, 736 F. App'x 33, 35 (3d Cir. 2018) (per curiam) ("[E]ven if McNeil claimed that the prison grievance procedures were constitutionally inadequate, Pennsylvania's state tort law would provide an additional adequate remedy.").

Thompson also alleges that some of the photographs depicted religious content and that he is a practicing Muslim. The Supreme Court has recognized the First Amendment guarantees that all prisoners must be afforded reasonable opportunities to exercise their religious freedom. *Cruz v. Beto*, 405 U.S. 319, 322 n. 2 (1972); *see also O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) ("Inmates clearly retain protections afforded by the First Amendment, . . . including its directive that no law shall prohibit the free exercise of religion.") (citations omitted). In order to state a plausible Free Exercise claim, a plaintiff must allege a "substantial burden" on the exercise. *Thomas v. Review Bd.*, 450 U.S. 707, 718 (1981); *Wisconsin v. Yoder*, 406 U.S. 205, 218 (1972). Thompson's allegations do not equate to a plausible First Amendment free exercise claim. As explained in the Court's prior Memorandum, "the fact that the subject of some of Thompson's photographs were religious in nature does not support a First Amendment claim." (ECF No. 5 at 7 (citing *Robinson v. Superintendent Houtzdale SCI*, 693 F. App'x 111, 115 (3d Cir. 2017) (per curiam) (explaining that "[t]he threshold question in any First Amendment or RLUIPA case is whether the prison's challenged policy or practice has substantially burdened the practice of the inmate-plaintiff's religion"))).) Nothing in the Amended Complaint suggests that the loss of these photographs substantially burdened Thompson's exercise of his religion.

Accordingly, Thompson has not stated a plausible claim based on the destruction of his non-legal property by CERT members.

### B. Claims Based on the Destruction of Legal Materials

Turning to Thompson's legal property, the Court understands Thompson to be bringing a claim that he was denied access to the courts as a result of the destruction of his legal materials.[6] "Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). "Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury'—that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." *Id.* (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)). "[T]he underlying cause of action, . . . is an element that must be described in the complaint." *Christopher*, 536 U.S. at 415.

Thompson has again failed to state a plausible claim for denial of access to the courts based on the appeal of the denial of his third post-conviction petition. As previously noted (ECF No. 5 at 6-8), and as Thompson acknowledges, (Am. Compl. ECF No. 7 at 17), he was given two extensions of time to file his appellate brief and was able to file his appellate brief on a timely basis, which the Superior Court considered. *See Thompson*, 2019 WL 1596195, at *2 ("On appeal, Appellant raises a single issue for our review." (citing Appellant's Brief)). Thompson generally alleges that his brief was incomplete due to the destruction of his legal materials and claims he was prevented from pursuing his appeal. However, he has not alleged with any

---

[6] To the extent he is bringing a due process claim based on the destruction of his legal materials, that claim fails for the same reasons the due process claims related to his non-legal property fail.

specificity how the absence of the destroyed documents was material to his success on appeal especially in consideration of the stringent legal standards that govern post-conviction challenges. *See* 42 Pa. Cons. Stat. Ann. § 9545(b). Furthermore, to the extent Thompson seeks *habeas*-type relief, his claims are not cognizable in a § 1983 action. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."). In sum, as Thompson has not plausibly alleged an actual injury, so he has not stated a claim for denial of access to the courts. *See Bowens v. Matthews*, 765 F. App'x 640, 643 (3d Cir. 2019) ("To the extent that Bowens described his PCRA claim at all, he did not describe it well enough to show that it is 'nonfrivolous' or 'arguable.'"); *Monroe*, 536 F.3d at 206 (plaintiffs' allegations that "defendants confiscated their legal materials" and that "they lost the opportunity to pursue attacks of their convictions and civil rights claims" without "specify[ing] facts demonstrating that the claims were nonfrivolous" did not state a claim).

**C. Claims Based on Mail**

Thompson separately asserts a claim that his legal mail was opened and copied by Defendants Wetzel, Ferguson and Sipple in conspiracy with Defendant Smart Communications. As noted above, this claim appears to involve a challenge to the Department of Corrections's relatively new mail policy. The claim is distinct from Thompson's claims related to property destruction that occurred in connection with the transfer of prisoners from SCI Graterford to SCI Phoenix.

Because the claims related to Thompson's mail are unrelated to the balance of Thompson's other claims, the claims are subject to severance under Federal Rule of Civil

Procedure 21. Federal Rule of Civil Procedure 20 allows a plaintiff to join multiple defendants in one action if: (a) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences"; and (b) "any question of law or fact common to all defendants will arise in the action." "For courts applying Rule 20 and related rules, 'the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'" *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)).

"But this application, however liberal, is not a license to join unrelated claims and defendants in one lawsuit." *McKinney v. Prosecutor's Office*, Civ. A. No. 13-2553, 2014 WL 2574414, at *14 (D.N.J. June 4, 2014) (internal quotations omitted). "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Indeed, "[t]he courts[] . . . have frowned on prisoners' attempts to lump together their multifarious grievances about life in a single prison[.]" *McKinney*, 2014 WL 2574414, at *15. To remedy a misjoinder, a Court may add or drop a party or sever any claims. Fed. R. Civ. P. 21. "A district court has broad discretion in deciding whether to sever a party pursuant to Federal Rule of Civil Procedure 21." *Boyer v. Johnson Matthey, Inc.*, Civ. A. No. 02-8382, 2004 WL 835082, at *1 (E.D. Pa. Apr. 16, 2004).

Thompson's factual allegations concerning the handling of his mail present a distinct set of events from those related to the destruction of his property. Accordingly, the Court will sever this claim from the instant lawsuit and direct the Clerk of Court to open a new lawsuit, using the Amended Complaint as an opening document, naming as Defendants Tammy Ferguson, Mandy

Sipple, John Wetzel, and Smart Communications.[7] If Thompson intends to proceed on any claims related to his mail, he will be obligated to either pay the fees or file for leave to proceed *in forma pauperis* in that new lawsuit.[8]

IV. **CONCLUSION**

For the foregoing reasons, the Court will dismiss Thompson's claims based on the destruction of his property by CERT members for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Thompson has already been put on notice of the defects in those claims and been given an opportunity to cure those defects. As he was unable do to so, the Court will dismiss Thompson's claims with prejudice because it appears that further attempts at amendment would be futile. The Court will sever Thompson's claims related to his mail so that he may proceed on those claims in another lawsuit. An appropriate Order follows.

---

[7] The Amended Complaint does not allege that members of CERT interfered with Thompson's mail or were otherwise involved in the events giving rise to these claims.

[8] If Thompson is granted leave to proceed *in forma pauperis* in that lawsuit, he will be obligated to pay another filing fee in installments pursuant to 28 U.S.C. § 1915(b) and his claims will be subject to screening under § 1915(e)(2)(B).

11